IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
On Brief February 1, 2011

## LOVARD DEANTA HORTON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2005-B-1419    Mark J. Fishburn, Judge**

_____

**No.  M2010-01298-CCA-R3-PC - Filed March 7, 2011**

_____

Petitioner, Lovard Deanta Horton, appeals from a Davidson County Court's dismissal of his petition for post-conviction relief.  Petitioner was indicted in a multi-count indictment for three counts of conspiracy to sell cocaine weighing 300 grams or more, one count of conspiracy to possess cocaine weighing 300 grams or more with the intent to sell, one count of possession of marijuana weighing 70 pounds, one gram or more with intent to sell, one count of money laundering, one count of conspiracy to possess 300 pounds or more of marijuana with intent to sell or deliver in a school zone, and one count of possession of 300 pounds or more of marijuana with intent to sell or deliver.  Petitioner pled guilty to two counts of conspiracy to sell cocaine weighing 300 grams or more, one count of possession of more than 70 pounds of marijuana with intent to sell, and one count of possession of more than 300 pounds of marijuana with intent to sell.  He received an effective sentence of twenty-eight years as a Range I, Standard Offender.  Petitioner filed a pro se petition for post-conviction relief alleging that he received ineffective assistance of counsel and that his guilty pleas were not knowingly and voluntarily entered.  After a hearing on the petition, the post-conviction court denied relief.  Petitioner has appealed.  After a review, we determine that Petitioner has failed to present clear and convincing evidence that his guilty plea was involuntarily or unknowingly entered or that he received ineffective assistance of counsel.  Accordingly, the judgment of the post-conviction court is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

Elaine Heard, Nashville, Tennessee, for the appellant, Lovard Deanta Horton.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Victor S. Johnson, District Attorney General; and Tammy Meade, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

In April of 2005, Petitioner, along with fourteen other individuals, was named in a multi-count indictment in Davidson County. Petitioner was indicted for three counts of conspiracy to sell cocaine weighing 300 grams or more, one count of conspiracy to possess cocaine weighing 300 grams or more with the intent to sell, one count of possession of marijuana weighing 70 pounds, one gram or more with intent to sell, one count of money laundering, one count of conspiracy to possess 300 pounds or more of marijuana with intent to sell or deliver in a school zone, and one count of possession of 300 pounds or more of marijuana with intent to sell or deliver.

At the guilty plea hearing, counsel for the State stated that had the case gone to trial, the evidence would have shown the following:

> [T]his case is the result of a wiretap conducted by the 20th Judicial District Task Force here in Nashville, Davidson County. [Petitioner] was the initial target of that investigation.
>
> Officers began wiretapping his personal cell phone in June of 2004. During their investigation on - - between the dates of July 4th, 2004 and July 6th of 2004, officers intercepted conversations and were able to follow [Petitioner] to determine that he was conspiring with others to sell more than 300 grams of cocaine here in Nashville, Davidson County.
>
> Officers were able to find that Mr. Juan Posada was to deliver the 300 grams or more of cocaine, it would have been kilos, to [Petitioner] here in Nashville, Davidson County. In turn, [Petitioner] was going to distribute that cocaine to a Christopher Bailey and a Tieruss Wardell. To further involve others into that, Mr. Bailey was then going to sell a portion of his cocaine to Greg Osborne, which is part of the cocaine distribution here in Nashville, Davidson County.

-2-

The investigation did continue after that day and officers intercepted more conversations and were able to conduct surveillance on [Petitioner]. They found between July 22nd of 2004 and July 29th of 2004, [Petitioner] agreed - - again got involved in a conspiracy agreeing to sell more than 300 grams of cocaine to persons here in Nashville, Davidson County.

Mr. Juan Posada was again the supplier of that cocaine, along with a Mr. Alberto Guevara, who has pleaded guilty previously in this court to this particular count. They were providing the 300 plus grams of cocaine to [Petitioner] and [Petitioner] was, again, agreeing to sell part of the cocaine he was purchasing to Mr. Christopher Bailey, Mr. Tieruss Wardell and another man that officer could only gleam as a man named Tony. Those events did occur here in Davidson County.

The investigation continued and on October the 24th - - I mean, October the 28th 2004, based on surveillance and telephone calls, officers were able to determine that Mr. Jose Omar Mora, who was [sic] pled previously in this court to these counts, brought the truck and a horse trailer full of marijuana to Davidson County, and it was in excess of 70 pounds of marijuana.

He was bringing the marijuana here, Mr. Mora was, at [Petitioner's] insistence and he was fronting that marijuana to [Petitioner] for resale here in Nashville, Davidson County. Officers were able to find the truck and trailer and did, in fact, find out that there was more than 70 pounds or marijuana in there that was coming directly to [Petitioner] at [Petitioner's] insistence.

The investigation continued after that point and got into December of 2004 where officers began intercepting more conversations in December where he, [Petitioner], was discussing with Mr. Mora and another man, a Mr. Angel Baeza, about bringing more marijuana into Davidson County. [Petitioner] continued to call Mr. Mora and Mr. Baeza and was complaining to them quite empathically that he was broke and that he needed the marijuana here because he had seven kids and five possibles and that he needed the money for Christmas because Christmas was coming.

. . . .

The investigation continued and on the 19th of December Mr. Mora contacted [Petitioner] and said that yes he had the trailer loaded and that he

would be here in possibly two days, and that was on the 19th. They continued the calls back and forth.

On the 21st of December of 2004 Mr. Mora contacted [Petitioner] and said he had the marijuana and that it was 8-0-0, meaning 800 pounds of marijuana, at which point [Petitioner] did become concerned at that point because he didn't have a place to store that much marijuana. Mr. Mora then guaranteed that he could not make the load any smaller at which point [Petitioner] told him to just come on with it and he would work it out and that he would accept the 800 pounds of marijuana. He said that he could work that out really quickly.

He continued contacting not only his supplier, Mr. Mora and Mr. Baeza, but also his purchasers, the ones he was distributing to, a Mr. Charlie Davidson and Mr. Jimmy Percell, which have both pled guilty in this court already and others.

The officers were able to track the horse trailer coming in from Midland, Texas. . . .

Finally, late on December 23rd, officers were able to get behind the horse trailer and the truck with Mr. Mora and Mr. Guerva on Interstate 40 eastbound at the Jackson exit. Officers followed that horse trailer all the way into Nashville, Davidson County.

Mr. Mora at that point spent - - he and Mr. Guerva spent the night at the Holiday Inn on Crossings Boulevard here in Nashville, Davidson County. Officers did conduct surveillance on the horse trailer all night and confirmed it did not move and no one touched it.

The next morning all of the arrangements were made. . . .

Officers were able to find [Petitioner] that morning. He met Mr. Mora and actually got in front of him and Mr. Mora followed him through Nashville to get to the distribution point, . . . which is 1,000 feet from Stratford High School. . . .

[O]fficers moved in. They found a hidden compartment in the trailer that contained   721 pounds of marijuana that was being distributed at

-4-

[Petitioner's] insistence and he was distributing it to them. All of the events did occur here in Davidson County.

At the conclusion of the guilty plea hearing, the trial court accepted Petitioner's guilty plea to two counts of conspiracy to sell cocaine weighing 300 grams or more, one count of possession of more than 70 pounds of marijuana with intent to sell, and one count of possession of more than 300 pounds of marijuana with intent to sell. He received an effective sentence of twenty-eight years as a Range I, Standard Offender.

Subsequently, Petitioner filed a pro se petition for post-conviction relief. The petition alleged that Petitioner received ineffective assistance of counsel and that the guilty plea was unknowing and involuntary. Counsel was appointed and an amended petition was filed. In the amended petition, Petitioner alleged that he received ineffective assistance of counsel because counsel: (1) failed to communicate effectively with Petitioner; (2) failed to investigate and properly prepare motions; (3) failed to interview witnesses; (4) failed to prepare for trial forcing Petitioner to take a plea agreement; (5) failed to get a hearing on the motion to suppress; (6) failed to file a motion to suppress the wiretapped conversations; (7) failed to explain the charges against Petitioner; (8) did not have the expertise to represent Petitioner; (9) failed to challenge Petitioner's arrest; (10) failed to seek recusal of the trial judge after a showing of bias; and (11) failed to have Petitioner declared indigent. Petitioner also alleged that his guilty plea was involuntary because trial counsel told him that it was "futile."

The post-conviction court held a hearing on the petition for relief. At the hearing, trial counsel testified that he "easily" met with Petitioner twenty-five times in preparation for the trial. At the time of the hearing, trial counsel was in his twentieth year of practicing law. Trial counsel informed the court that although he had prepared a motion to suppress, both he and Petitioner realized after the motion was filed that they had no standing to bring the motion. However, trial counsel went ahead with the motion to bring out the fact that Petitioner had no connection whatsoever to the trailer with the drugs inside. Trial counsel testified that he spoke with Petitioner about trying to suppress the wiretaps but that they could never "find an issue" that would have been successful with regard to the wiretaps. Trial counsel recalled that there were some negotiations prior to a possible trial but that Petitioner was uninterested in the offer. Trial counsel described himself as being in "trial mode the whole time this case was ongoing expecting it to go to trial." Trial counsel insisted that he did not inform Petitioner that his chances at trial were grim.

When the plea offer finally materialized, trial counsel recalled going over every detail of the plea with Petitioner. In fact, trial counsel stated that he "read it and I read it out loud together [with Petitioner]." Trial counsel also told Petitioner about the total length of time

he would be facing if he were convicted of all counts at trial. Trial counsel described Petitioner as "intelligent" and was confident that Petitioner understood the plea form. In fact, trial counsel stated that he "believe[d] firmly that it was a knowing, voluntary plea."

Petitioner took the stand at the post-conviction hearing. He admitted that trial counsel made "quite frequent" visits. Petitioner claimed that he did not know exactly what "was in the trailer" and that "hearings could have clarified [these things] for [him]." Petitioner claimed that he did not completely understand how much time he was facing for the charges. Petitioner claimed that he wanted a hearing on the motion to suppress, and it was not his decision to drop that motion. Further, Petitioner claimed that he did not "understand the guidelines and the sentencing" before he took the plea. However, on cross-examination, Petitioner admitted that he did not "have any questions about [the] plea that were not answered at the time of the plea" and that the trial court thoroughly questioned him at the plea hearing regarding his understanding of the plea.

At the conclusion of the hearing, the post-conviction court took the matter under advisement. In a memorandum opinion, the post-conviction court denied relief. The post-conviction court specifically found that trial counsel met with Petitioner on at least twenty-five occasions, was successful in a pretrial motion to sever from the other fifteen defendants, and fully explained the implications of all the school zone issues related to Petitioner's convictions on numerous occasions. The post-conviction court specifically accredited the testimony of trial counsel "in all respects," finding "no basis for Petitioner's claim of ineffective assistance of counsel." The post-conviction court determined that Petitioner's plea was knowing and voluntary. Petitioner spoke with trial counsel numerous times about the implications of the plea, was informed of the implications in open court, informed the trial court that he understood the implications, and waived his rights to a trial. The post-conviction court found "no merit" in this issue.

Petitioner appealed.

*Analysis*

Initially, we must address the State's argument that the notice of appeal is untimely. The post-conviction court entered its order on May 7, 2010, a Friday. Petitioner filed his notice of appeal on June 7, 2010, a Monday. The State argues that the notice of appeal was one day late and, therefore, the appeal should be dismissed. The State is correct in its assertion that Tennessee Rule of Appellate Procedure 4(a) mandates that a notice of appeal to this court shall be filed "within 30 days after the date of entry of the judgment appealed from. . . ." However, Tennessee Rule of Appellate Procedure 21 specifies:

> In computing any period of time prescribed or allowed by these rules, the date of the act, event, or default after which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included *unless* it is a Saturday, a *Sunday*, or a legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the court clerk inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days. . . .

Tenn. R. App. P. 20(a) (emphasis added). In the case herein, the thirtieth day fell on a Sunday, so Petitioner had until Monday, June 7, 2010, to file the notice of appeal. Consequently, Petitioner's notice of appeal was timely. Even if Petitioner's notice of appeal had been untimely, in criminal cases, "the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interests of justice." T.C.A. § 27-1-123; *see also* Tenn. R. App. P. 4. Moreover, had the notice herein been untimely, the tardiness of the notice would have been de minimis, and the State would have suffered no prejudice.

*Post-conviction Standard of Review*

The post-conviction court's findings of fact are conclusive on appeal unless the evidence preponderates otherwise. *See State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). During our review of the issue raised, we will afford those findings of fact the weight of a jury verdict, and this court is bound by the post-conviction court's findings unless the evidence in the record preponderates against those findings. *See Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *Alley v. State*, 958 S.W.2d 138, 147 (Tenn. Crim. App. 1997). This Court may not re-weigh or re-evaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court. *See State v. Honeycutt*, 54 S.W.3d 762, 766 (Tenn. 2001). However, the post-conviction court's conclusions of law are reviewed under a purely de novo standard with no presumption of correctness. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, the petitioner bears the burden of showing by clear and convincing evidence that (a) the services rendered by trial counsel were deficient and (b) that the deficient performance was prejudicial. *See Powers v. State*, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996); *see also* T.C.A. § 40-30-110(f). In order to demonstrate deficient performance, the petitioner must show that the services rendered or the advice given was below "the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). "Because a petitioner must establish both prongs of the test to prevail on a

claim of ineffective assistance of counsel, failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley*, 960 S.W.2d at 580.

As noted above, this Court will afford the post-conviction court's factual findings a presumption of correctness, rendering them conclusive on appeal unless the record preponderates against the court's findings. *See id.* at 578. However, our supreme court has "determined that issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact . . . ; thus, [appellate] review of [these issues] is de novo" with no presumption of correctness. *State v. Burns*, 6 S.W.3d at 461.

Furthermore, on claims of ineffective assistance of counsel, Petitioner is not entitled to the benefit of hindsight. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This Court may not second-guess a reasonably-based trial strategy, and we cannot grant relief based on a sound, but unsuccessful, tactical decision made during the course of the proceedings. *See id.* However, such deference to the tactical decisions of counsel applies only if counsel makes those decisions after adequate preparation for the case. *See Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate the principle that guilty pleas be voluntarily and intelligently made. *See Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (citing *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). As stated above, in order to successfully challenge the effectiveness of counsel, Petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *See Baxter*, 523 S.W.2d at 936. Under *Strickland*, Petitioner must establish: (1) deficient representation; and (2) prejudice resulting from the deficiency. 466 U.S. at 694. However, in the context of a guilty plea, to satisfy the second prong of *Strickland*, Petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

When analyzing a guilty plea, we look to the federal standard announced in *Boykin v. Alabama*, 395 U.S. 238 (1969), and the state standard set out in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977). *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999). In *Boykin*, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242. Similarly, our Tennessee Supreme Court in *Mackey* required an affirmative showing

of a voluntary and knowing guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. *Pettus*, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. *Pettus*, 986 S.W.2d at 542; *Blankenship*, 858 S.W.2d at 904.

On appeal, Petitioner alleges that trial counsel improperly failed to have a hearing on the motion to suppress, failed to adequately explain sentencing guidelines, and was not prepared for trial, giving Petitioner no other choice but to plead guilty. The alleged ineffective assistance of counsel, Petitioner maintains, led to the entry of an unknowing and involuntary plea. Petitioner contends that he was prejudiced because he was denied a trial and forced to receive a twenty-eight year sentence as a first time offender.

Petitioner has not shown that trial counsel failed to prepare for the case prior to the plea. Trial counsel testified at the hearing that he met with Petitioner at least twenty-five times prior to the entry of the plea. Further, trial counsel testified that he filed a motion to suppress even though he and Petitioner discussed the fact that they did not have standing to challenge the evidence found in the horse trailer. Trial counsel also successfully managed to get Petitioner's case severed from the cases of the fourteen other defendants. Trial counsel also testified that he spoke with Petitioner at length regarding the ramifications of the plea and that the two read the plea agreement aloud together prior to the entry of the plea. The post-conviction court accredited the testimony of trial counsel.

In other words, Petitioner has failed to show that but for trial counsel's alleged deficiencies, he would have refused to plead guilty and insisted on going to trial. The transcript of the guilty plea hearing reflects that the trial court discussed the ramifications of the guilty plea with Petitioner. Petitioner was thoroughly questioned by the trial court to ascertain whether he understood the effects of the plea.

The plea hearing also indicates that Petitioner knew what he was doing, understood the plea, and agreed that it was what he wanted to do to resolve the case. Petitioner has failed to show by clear and convincing evidence that he received ineffective assistance of counsel or that his guilty plea was involuntary. Petitioner himself admitted to the post-conviction court that he chose to plead guilty and did not have "questions . . . that were not answered at the time of the plea." Petitioner has failed to show by clear and convincing evidence that trial counsel was unprepared or pressured him into pleading guilty.

Moreover, Petitioner has failed to prove he did not understand the consequences of his plea. Petitioner admitted that he knew the consequences of the plea. Trial counsel also recalled several conversations prior to the entry of the plea. "[Q]uestions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact," and the post-conviction court's credibility determinations are conclusive on appeal unless the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). We find no evidence to preponderate against the findings of the post-conviction court. Further, Petitioner has failed to show that there is a reasonable probability that the proceedings would have concluded differently had counsel performed as Petitioner now claims he should have. *Vaughn v. State*, 202 S.W.3d 106, 120 (Tenn. 2006) (citing *Strickland*, 466 U.S. at 687). The evidence does not preponderate against the determination of the post-conviction court.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
JERRY L. SMITH, JUDGE

-10-